IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BUSINESS OBJECTS, S.A.,

    Plaintiff,

v.

MICROSTRATEGY, INC.,

    Defendant.

No. C 01-03908 CRB

**MEMORANDUM AND ORDER**

    In this lawsuit plaintiff Business Objects, S.A. alleges that defendant Microstrategy, Inc. manufactures software which infringes Claims 1, 2 and 4 of United States Patent No. 5,555,403 ("the '403") owned by plaintiff. The Court issued its claim construction order on May 1, 2003. Now pending before the Court is defendant's motion for summary judgment of non-infringement of all three Claims. After carefully considering the papers and evidence filed by the parties, and having had the benefit of oral argument, the Court GRANTS defendant's motion.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

    Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient

evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. See id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. See id. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. See id. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 323.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS DEFENSE OF NON-INFRINGEMENT**

A patentee may show infringement either by showing that an accused product literally infringes a claim in the patent or that the product infringes under the doctrine of equivalents. See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir.) (noting that an "accused product that does not literally infringe a claim may infringe under the doctrine of equivalents . . ."), cert. denied, 516 U.S. 987 (1995). Whether an accused product infringes

2

is ordinarily an issue of fact for the jury. See id. at 1575 (noting that both literal infringement and infringement under the doctrine of equivalents are factual issues).

### A. Literal Infringement

To determine whether an accused device literally infringes a patent right, the Court must perform a two-step analysis: first, it must construe the claims to determine their meaning and scope; and second, it must compare the claims as construed to the accused device. See id. ("In the second step, the trier of fact determines whether the claims as thus construed read on the accused product."). The Court completed the first step in its Claim Construction Order, and now must compare the claims as interpreted to defendant's accused products. To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." Id.; see also Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").

#### 1. The "associating step" limitation

Defendant asserts that its products do not infringe Claims 1 and 2 of the '403 as a matter of law because its products do not satisfy the "associating step" limitation. The Court agrees. In its Claim Construction Order (the "Order") the Court expressly rejected plaintiff's argument that the SELECT and WHERE clauses recited in the associating step limitation are the clauses referred to in the "generating a query" step. The Court held that the "associating step," that is, the association of a familiar name with a SELECT clause and a WHERE clause, must occur prior to the "generating a query" step. Order at 9. It is undisputed that the accused devices do not associate a familiar name with a SELECT and WHERE clause prior to the generation of a query. The examples identified by plaintiff at oral argument show the association of the familiar name with a SELECT and WHERE clause occurring at the "generating a query" step.

The Court rejects plaintiff's argument that the accused devices infringe because defendant's products associate "an element" of a SELECT and WHERE clause with a familiar name. The Court construes "an element" to mean a portion of the

SELECT/WHERE clause produced at the generating a query step; "an element" is not so broad as to encompass information that will be, but is not yet, associated with a SELECT or WHERE clause. Accordingly, no reasonable jury could find that the accused products literally infringe Claims 1 and 2 of the '403.

### 2. The "query engine means" limitation

Claims 2 and 4 include a "query engine means" limitation. The Court previously construed this limitation as a "means plus function" limitation which requires that it be interpreted to cover "the corresponding structure, material, or acts described in the specification." 35 U.S.C. § 112(6); Order at 11. The Court identified the corresponding structure as an algorithm described in the patent. Order at 12.

An accused device will infringe a means plus function limitation if it performs the identical function specified in the patent and employs the identical or equivalent structure. See WMS Gaming, Inc. v. International Game Tech., 184 F.3d 1339, 1350 (Fed. Cir. 1999). The function of the query engine means is to generate queries in the predetermined query language based on a given combination of two or more selected and associated familiar names. The Court construed "predetermined query language" to mean language that is determined prior to the generating step and that "supports the functions and operators contained in the associating step's SELECT clause." Order at 10. As is explained above, the "associating step" in the accused products does not include a SELECT clause; thus, the accused device does not include the *identical* function and thus does not literally infringe.

### B. Infringement under the Doctrine of Equivalents

Defendant has also moved for summary judgment that its products do not infringe under the doctrine of equivalents. Under that doctrine, a product that does not literally infringe a patent claim may still infringe if each and every limitation of the claim is literally or equivalently present in the accused device. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997) ("In our view, the particular linguistic framework used is less important than whether the test is probative of the essential inquiry: Does the accused

1 product or process contain elements identical or equivalent to each claimed element of the
2 patented invention?").

3 Whether an element of an accused product (or the product itself in its entirety)
4 infringes under the doctrine of equivalents depends in part on whether that component (and
5 the device overall) performs substantially the same function as the claimed limitation in
6 substantially the same way to achieve substantially the same result. See <u>Ethicon Endo-
7 Surgery, Inc. v. United States Surgical Corp.</u>, 149 F.3d 1309, 1315 (Fed. Cir. 1998);
8 <u>Pennwalt Corp. v. Durand-Wayland, Inc.</u>, 833 F.2d 931, 934-35 (Fed. Cir. 1987) (en banc)
9 ("Under the doctrine of equivalents, infringement may be found (but not necessarily) if an
10 accused device performs substantially the same overall function or work, in substantially the
11 same way, to obtain substantially the same overall result as the claimed invention."), <u>cert.
12 denied</u>, 485 U.S. 961 (1988). If the differences between a claim and an accused device are
13 "insubstantial" to one with ordinary skill in the art, the product may infringe under the
14 doctrine of equivalents. See <u>Ethicon</u>, 149 F.3d at 1315; <u>Sage Prods., Inc. v. Devon Indus.,
15 Inc.</u>, 126 F.3d 1420, 1423 (Fed. Cir. 1997). The doctrine prevents an accused infringer from
16 avoiding infringement by changing minor details of a claimed invention while retaining its
17 essential functionality. See <u>id.</u> at 1424.

18 As with literal infringement, infringement under the doctrine of equivalents is a
19 question of fact for the jury, so summary judgment is only appropriate where no reasonable
20 jury could determine that two elements are equivalent. See <u>Sage</u>, 126 F.3d at 1424-26. Also,
21 defendant need only show that its devices do not contain one of the limitations in the '403
22 patent. See <u>Warner-Jenkinson Co.</u>, 520 U.S. at 40 (an accused device may infringe under the
23 doctrine of equivalents if *each* limitation of the claim is met in the accused device either
24 literally or equivalently).

25 Defendant argues that prosecution history estoppel bars plaintiff from making a
26 doctrine of equivalents claim. "Prosecution history estoppel serves to limit the doctrine of
27 equivalents by denying equivalents to a claim limitation whose scope was narrowed during
28 prosecution for reasons related to patentability." <u>Pioneer Magnetics, Inc. v. Micro Linear</u>

5

Corp., 330 F.3d 1352, 1356 (Fed. Cir. 2003). "To determine whether a claim gives rise to prosecution history estoppel, [a court] first must determine whether the amendment narrowed the literal scope of the claim." Id. If the amendment narrowed the claim, the court must next determine "the reason why the applicant amended a claim." Id. "The burden is on the patent holder to establish that the reason for the amendment is not one related to patentability." Id. Where no explanation is established, a court should presume that the applicant had a substantial reason related to patentability for the amendment." Id.

Even when a claim was narrowed for reasons of patentability, a patent holder can overcome the presumption that it has surrendered the equivalent in question if it establishes that "[t]he equivalent [was] unforeseeable at the time of the application; the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question; or there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." Pioneer Magnetics, Inc., 330 F.3d at 1357 (quoting Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskiki Co., Ltd., 535 U.S. 722, 739 (2002)). Whether prosecution history estoppel applies is a question of law for the Court. See Cyber Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

### 1. the "associating step" limitation

The application that led to the '403 included a broad method claim, claim 24. The patent examiner rejected claim 24 for two reasons. First, the examiner rejected the claim as indefinite under 35 U.S.C. section 112. Second, the examiner found that claim 24 was anticipated by the Tou and Shaw patents. Plaintiff responded by cancelling claim 24 and substituting a new method claim, claim 29 (which later became claim 1 of the '403). The amended claim included a new step: the associating step requiring that a familiar name be associated with a SELECT clause and a WHERE clause. Plaintiff argued to the examiner that the amendments made its invention patentable over Shaw and Tou:

> Claim 29 includes a step of "associating" a familiar name with a WHERE clause that includes a condition. The WHERE clause is used in query language such as the SQL language from Oracle, Inc. The WHERE clause's "condition" is later used in the "generating" step. . . .

6

> Neither Shaw nor Tou disclose the use of conditions in WHERE clauses.
>
> . . .
>
> Shaw discloses the SQL database, including WHERE clauses, but does not disclose nor make obvious the use of condition within a WHERE clause where the WHERE clause is associated with a familiar name. In Shaw, any WHERE clauses are associated with the actual SQL query and not with familiar names.

(Declaration of James Valentine ("Valentine Decl."), Exh. F at 7.)

Plaintiff concedes, as it must, that its amendment narrowed its method claim and that the amendment was made for a reason related to patentability. It argues instead that it has overcome the estoppel presumption by showing that the narrowing amendment had no more than a "peripheral or tangential" relation to defendant's accused equivalent.

Plaintiff's argument is unpersuasive. Plaintiff's amendments are directly related to the claimed equivalents. The accused products do not use conditions in WHERE clauses, the precise ground upon which plaintiff distinguished its invention from Shaw and Tou. Since plaintiff distinguished Shaw and Tou on this ground before the examiner, plaintiff is barred from contending that the accused products include an equivalent to the use of conditions in WHERE clauses.

### 2. The "query engine means" limitation

The function of the query engine means is to generate queries in the predetermined query language. The Court has already determined that the accused devices do not literally infringe this limitation because the "associating step" in the accused products does not include a SELECT clause. Defendant argues that prosecution history estoppel bars plaintiff from arguing that the accused products perform a function equivalent to the 403's query engine means function.

The original patent application included a claimed "query engine means for translating said user query into structured query language (SQL) equivalent statement." (Valentine Decl., Exh. D at 38). The patent examiner rejected this claim on the ground that it was anticipated by Tou. The examiner specifically noted that "Tou anticipated the claimed invention by describing a relational database access system including the claimed . . . 'query engine means for translating said user query into a structured query language (SQL)

equivalent.'" Id., Exh. E at 4-5. The examiner also found that Shaw anticipated the claims for the same reasons as Tou. Id. at 6.

Plaintiff responded to the examiner's rejection by substituting new claims that contain the query engine means limitations of the '403. Defendant argues that the amendment of the query engine means language was not related to patentability. See Opposition at 16 ("Nor is there any mention in Business Objects' amendment and response to indicate that the 'predefined query language" was included to avoid any of the Examiner's rejections."). It contends that the only reasonable inference is that the amendment was made to clarify what the inventors believed was implicit in the claims as originally described, that is, that the query language used with the invention would be "predefined."

The Court disagrees. The reasonable inference the Court draws from the intrinsic evidence is that plaintiff added "predefined query language" to its query engine means limitation to overcome the examiner's rejection of the claim on the ground that it was anticipated by Tou and Shaw. This amendment is directly related to the claimed equivalent. Accordingly, prosecution history estoppel bars plaintiff from contending that the accused devices practice a function equivalent to the 403's query engine means.

## CONCLUSION

For the foregoing reasons the Court concludes that the accused devices do not infringe Claims 1, 2 and 4 of the 403 as a matter of law and GRANTS defendant's motion for summary judgment. Defendant's counterclaims are dismissed as moot.

**IT IS SO ORDERED.**

Dated: Aug. 29, 2003

                                    /s/
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE